United States District Court
Southern District of Texas
**ENTERED**
April 03, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GUERDON GREEN, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-379 |
| | § | |
| AMERISOURCEBERGEN CORPORATION, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Pending before the Court is the defendants', AmerisourceBergen Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively the "defendants") Joint Motion to Dismiss Relator's Third Amended Qui Tam Complaint pursuant to Rules 12(b)(1), 12(b)(6), 8(a) & 9(b) of the Federal Rules of Civil Procedure (Dkt. No. 45) and Memorandum in Support (Dkt. No. 46). The Relator, Guerdon Green ("Relator"), filed a response in opposition (Dkt. No. 52), to which the defendants filed a reply (Dkt. No. 55). After having carefully reviewed the motions, the responses and the applicable law the Court GRANTS the defendants' joint motion to dismiss.

### II.    Factual Background

The following allegations are found in the Relator's Third Amended Qui Tam Complaint ("Complaint"). The Relator joined Syntegra Solutions, Inc. ("Syntegra") in 2003 as the Vice President of Sales and Marketing. The current Complaint asserts that Syntegra was retained by manufacturers to audit the defendant wholesalers. Syntegra conducted two main auditing functions: chargeback audits and operational audits. While at Syntegra, Relator managed corporate relationships and conducted closing meetings at the conclusion of each audit. *See*

(Dkt. No. 19 at 7).  The Relator alleges that through his work at Syntegra the Relator uncovered the fraudulent acts of the defendants.

Pursuant to the *qui tam* provisions of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3730, Relator filed the initial complaint in this action on or about February 9, 2015, filed an amended complaint on or about March 9, 2015, and filed the Complaint on or about January 5, 2016.  Relator completed service of the Complaint and the disclosure statement required by 31 U.S.C. § 3730(b)(2) on the Attorney General and the United States Attorney's Office for this District.  On November 9, 2015, the United States declined to intervene, as did each State named in the first two complaints.

In his Complaint, the Relator alleges that the defendants—three large pharmaceutical wholesalers—engaged in conduct that caused drug manufacturers to underpay rebates owed to Medicaid pursuant to the Medicaid Drug Rebate Program ("MDRP"), 42 U.S.C. § 1396r-8. Under the MDRP, drug manufacturers are required to calculate the Average Manufacturer Price ("AMP") for each of their outpatient drugs covered by Medicaid, report those AMPs to the Centers for Medicare and Medicaid Services ("CMS") on a quarterly basis, and pay quarterly rebates to State Medicaid programs that based, in part, on the reported AMPs.  The AMP for each covered drug is generally based on the average unit price manufacturers receive from wholesalers (or after passage of the Affordable Care Act in 2010, from wholesaler and retail pharmacies purchasing directly from manufacturers) during the relevant time period, net of discounts and other price concessions that lower the amounts actually paid for the drug.

The conduct at issue in this case relates to "chargebacks," which are payments that drug manufacturers make to wholesalers when the wholesalers are contractually required to sell the manufacturers' drugs to their retail customers at special reduced prices pursuant to contracts

between the manufacturers and retailers.  The Relator's Complaint alleges that the defendants submitted and continue to submit false data to manufacturers in the form of the 844 Data Set. The Relator argues that the accuracy of the 844 Data Set is important to manufacturers because the information within this Data Set is used to calculate AMP.  Relator claims that the comparison of the 844 Data Set to the 867 Data Set exposed the defendants' fraudulent activities.

The Relator further alleges that the defendants violated the FCA by engaging in four types of misconduct associated with chargebacks: (1) failing to issue "reverse chargebacks" to the drug manufacturers when retailers returned drugs for which the defendants had previously received chargeback payments from the manufacturers; (2) submitting duplicate chargeback requests to the manufacturers; (3) refusing to issue reverse chargebacks to the manufacturers when the amounts due do not exceed a threshold amount, or when the customer returns occur after a threshold period of time; and (4) submitting fraudulent chargeback requests.  Relator contends that each of these improper practices artificially affected the net amounts the drug manufacturers received for sales of their products, causing the manufacturers to calculate and report artificially reduced AMPs to CMS, thereby causing the manufacturers to underpay MDRP rebates due to State Medicaid programs, and further causing the United States to be overcharged for payments to the State Medicaid programs.

III.    **Contentions of the Parties**

   A.    **The Defendants' Contentions**

The defendants have moved to dismiss the Relator's claims.  The defendants aver that Relator's Complaint fails to state a claim on which relief can be granted, and it fails to satisfy the heightened pleading standard required for FCA claims.  The defendants further allege the following arguments.  First, Relator's allegations are based on and are substantially the same as

prior publicly available information and, thus, the public-disclosure bar precludes his claims. Second, Relator's theory of liability rests on a fundamental misreading of the applicable statute and regulations concerning the calculation of AMP. Third, the Complaint fails to satisfy Rules 8 and 9(b) of the Federal Rules of Civil Procedure because Relator does not plead a plausible factual basis for relief, i.e. requisite scienter, and particular facts demonstrating the existence of fraudulent action. Accordingly, the defendants argue that their motion to dismiss should be granted.

### B.    The Relator's Contentions

The Relator alleges that from 2004 to the present, the defendants fraudulently concealed and withheld chargeback payments from the manufacturers, causing the manufacturers to underreport AMP. The Relator argues that the defendants' fraudulent activities caused the manufacturers to commit fraud against the federal government. The Relator alleges that his Complaint clearly satisfies the Rule 9(b) standard promulgated by the Fifth Circuit requiring "particular details" of a fraudulent scheme and "reliable indicia" that false claims were presented. The Relator argues that the defendants' public disclosure defense is not applicable, arguing that the defendants' "public disclosures" fail to qualify as public disclosures under both guidelines set by the Fifth Circuit as well as 31 U.S.C. §3730(e)(4)(A)(ii) and (iii). Finally, the Relator asks that the Court deny the defendants' motion to dismiss.

## IV.    Standard of Review

### A. Rule 12(b)(1)

" '[A] challenge under the FCA jurisdictional bar is necessarily intertwined with the merits' and is, therefore, properly treated as a motion for summary judgment." *U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.,* 384 F.3d 168, 173 (5th Cir. 2004)

(quoting *Laird,* 336 F.3d at 352).   "A grant of summary judgment is proper if, viewing the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)).  At the summary judgment stage, a court may not weigh the evidence or evaluate the credibility of witnesses, and all justifiable inferences will be made in the non-moving party's favor.  *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998).

Federal Rule of Civil Procedure Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction.  "If [a federal] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Because federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims.  *See, e.g., Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).  Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *see also Stockman*, 138 F.3d at 151.

When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *MDPhysicians & Assoc.*, *Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Vantage Trailers*, 567 F.3d at 748 (reasoning that "[i]n evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of

truthfulness to the plaintiff's allegations.")  In making its ruling, the court may rely on any of the following:  "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

B.      **Rule 12(b)(6) and Rule 9(b)**

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)).  Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 - 65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)).

More recently, in *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other condition of mind of a person may be alleged generally." *Id*. Although the particularity Rule 9(b) demands differs with each case, "a plaintiff pleading fraud must set forth the who, what, when, and where before access to the discovery process is granted. Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir.2000) (quotations and citations omitted); accord *United States ex rel. Steury v. Cardinal Health, Inc.*

*(Steury II)*, 735 F.3d 202, 204 (5th Cir.2013).   Rule 9(b) has four purposes: to ensure that the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; to protect defendants against frivolous suits; to eliminate fraud actions in which all the facts are learned after discovery; and to protect defendants from undeserved harm to their goodwill and reputation.   *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.1999).   Rule 9(b) must be interpreted and applied in light of these purposes.

" '[C]laims brought under the FCA must comply with the particularity requirements of 9(b)' for claims of fraud."   *Steury II*, 735 F.3d at 204 (quoting and altering *United States ex rel. Steury v. Cardinal Health, Inc. (Steury I)*, 625 F.3d 262, 266 (5th Cir.2010)).   While FCA claims must comply with Rule 9(b)'s pleading requirements, [i]n contrast to common-law fraud, the FCA "lacks the elements of reliance and damages."   *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189 (5th Cir.2009).   "It is adequate to allege that a false claim was knowingly presented regardless of its exact amount; the contents of the bill are less significant because a complaint need not allege that the Government relied on or was damaged by the false claim."   *Id.*

"[T]o plead with particularity the circumstances constituting fraud for a False Claims Act [§ 3729(a)(1)(A)] claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."   *Id.* at 190.   To plead with the requisite particularity a § 3729(a)(1)(B) claim, the complaint need not "allege details of fraudulent bills actually presented to the government." *Id.* at 192.   The relator must, however, allege facts showing that "the defendant made a false record or statement [material to] a false or fraudulent claim paid by the Government."   *Id.*; *see* also 31 U.S.C. § 3729(a)(1)(B).

**V.      Analysis and Discussion**

**A.      Federal False Claims Act**

The FCA imposes monetary liability on any person who knowingly presents a false claim for payment to the federal government or knowingly makes a false statement material to a false claim. *See* § 3729(a)(1).  The FCA authorizes private individuals to bring actions on behalf of the United States to enforce its provision, [§ 3730(b)]; however, it bars certain private actions that involve publicly disclosed allegations, [§ 3730(e)(4) (the "public disclosure bar")].   On March 23, 2010, President Obama signed into law the Patient Protection and Affordable Care Act ("PPACA"), Pub.L. No. 111–148, 124 Stat. 119. Section 10104(j)(2) of this legislation replaces the prior version of 31 U.S.C. § 3730(e)(4) (2006) with new language.   The prior version of the public disclosure bar and original source-requirement provided that:

> (4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of information.

> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(A)-(B) (2006), amended by 31 U.S.C. § 3730(e)(4)(A)-(B) (Supp.2011).

The PPACA amended the statute to currently read:

> (4)(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(A)-(B) (Supp.2011).

Because the Relator's allegations of fraud against the defendants extend from 2004 to present, *see* (Dkt. No. 19, at 4), the Court must apply the jurisdictional pre-PPACA version of the public-disclosure bar to the allegations of fraud that pre-date July 22, 2010.  For Relator's allegations that post-date July 22, 2010, the Court must apply the non-jurisdictional public-disclosure bar.[1]  The purpose of this jurisdictional bar is to accommodate the primary goals of the False Claims Act: (1) "promoting private citizen involvement in exposing fraud against the government" and (2) "preventing parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud."  *U.S. ex. rel. Laird v. Lockheed Martin Eng'g & Sci. Servs., Co.*, 336 F.3d 346, 351 (5th Cir. 2003).  Accordingly, the Court will first address Relator's claims based on the defendants' conduct before July 22, 2010, under the old version of the statute.

**B.**     **Pre- PPACA Amendment**

The Fifth Circuit employs a burden shifting framework when determining if there has been a public disclosure.  First, the court asks "whether [Relator's] action was based upon public disclosures of allegations or transactions."  *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011).  If the defendants identify public disclosures, the relator then has the burden to show a genuine issue of material fact as to whether his action was based on those public disclosures.  *Id*.  When determining if a public disclosure exists the Court must consider

---

[1] Although the post-PPACA version of the public-disclosure bar is not jurisdictional in nature, it expressly authorizes dismissal of an action or claim.  31 U.S.C. § 3730(e)(4)(A).

three questions: "(1) whether there has been a 'public disclosure' of allegations or transactions, (2) whether the qui tam action is 'based upon' such publicly disclosed allegations, and (3) if so, whether the Relator is the 'original source' of the information."  *Id*. at 352.  The Court does not have to rigidly follow these steps.  *Id*. at 327.  The Fifth Circuit has routinely combined the first step—public disclosure of allegations or transactions—and second step—that the action is based upon—of the analysis, focusing instead on whether the disclosures were related in scope to the Relator's complaint.  *Id*.

The defendants allege that Relator's claims have been publicly disclosed through news media and public comments to administrative proceedings.  (Dkt. No. 46 at 18).  The defendants' motion courses through Relator's claims and alleges evidence of public disclosures.  *Id*. at 18-24. The defendants cited magazine articles, blog posts and newsletters, spanning from 2007 to 2010 that discussed discrepancies in chargeback data, duplicate chargebacks, and omitted reverse chargebacks as an issue for pharmaceutical manufactures.  The defendants further allege public disclosures were made when CMS solicited comments on a proposed regulation and comments were filed by Teva Pharmaceuticals.  Relator responds that the defendants failed to cite a qualifying public disclosure, arguing that Congress removed "administrative rulemaking proceeding" from the definition of public disclosure in 2010, which would disqualify the Teva comments, and that blogs do not qualify as "news media" under the public disclosure bar.  Thus, the issue now turns on what constitutes a qualified public disclosure under the FCA.

As stated above, the Relator alleges that blogs do not constitute news media under 31 U.S.C. § 3730(e)(4)(A)(iii) and as such fail to qualify as a public disclosure.  The Court does not agree.  The Supreme Court has found that § 3730(e)(4)(A) is over-inclusive when determining if news media meets the standard of a public disclosure.  "The 'news media' referenced in [§

3730(e)(4)(A)(iii)] plainly have a broader sweep." *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290, 130 S. Ct. 1396, 1404, 176 L. Ed. 2d 225 (2010). Courts have unanimously interpreted the term "public disclosure" to include websites and online articles. *See Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408, 131 S.Ct. 1885, 179 L.Ed.2d 825 (2011). The defendants cited several magazines and blogs that meet this standard. More specifically, the defendants cite to an article found in a magazine named "Pharmaceutical Commerce" as well as several blog posts and newsletters published online by IDC Health. These articles discuss issues with chargeback payments and the resulting loss revenue suffered by manufactures. Founded in 2005, IDC Health provides market research and advisory services to health and life sciences industry executives. Distinguishable from cases cited by the Relator, the webpages cited by the defendants are easily available to the public and are updated on a regular basis. The Court is of the opinion that these disclosures are relevant and credible sources that are deemed "news media" in regards to § 3730(e)(4)(A)(iii).

Now the Court turns to the second prong of the test, which is to determine if the Relator's allegations were based on the defendants' public disclosure. It is the prevailing view of circuits that "a lawsuit is based upon publicly disclosed allegations when the relator's allegations and the publicly disclosed allegations are substantially similar." *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 915 (7th Cir. 2009). The Relator argues that the defendants' public disclosures are not substantially similar to his allegations, because the defendants' disclosures omitted significant facts needed to prove fraud. The Fifth Circuit has held that the test is satisfied if the complaint is "even partly based upon public allegations or transactions." *Stennett v. Premier Rehab., LLC*, 479 Fed.Appx. 631, 635 (5th Cir. 2012).

As stated above, the Complaint alleges that the defendants concealed reverse chargeback payments, submitted duplicate chargeback requests, and submitted fraudulent chargeback requests, which caused underreported AMPs.  These claims are substantially similar to those of a 2010 magazine article submitted by the defendants detailing lost revenue of the manufacturing companies due to the discrepancies between them and wholesalers in chargeback data, duplicate chargebacks, and omitted reverse chargebacks.  (Dkt. No. 46, Tab. 52 at 5-6).  The article goes on to mention the 867 Data Set, stating it is a "key data stream" that impacts all transactions between wholesalers and manufactures.  *Id*. at 6.  The Relator admits that the 867 Data Set played an integral part in uncovering the alleged fraud.

The Relator argues further that the defendants' public disclosures fail to qualify because they do not match the scope or breadth of the Relator's claims and fail to provide allegations of Medicaid rebate fraud.  This argument is unavailing as the Fifth Circuit has held that "[a]n FCA qui tam action even partly based upon public allegations or transactions is nonetheless 'based upon' such allegations or transaction[s]".  *U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 176 (5th Cir. 2004).  "A relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material elements of the violation already have been publicly disclosed."  *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1245 (9th Cir. 2000).

Although the defendants' public disclosures may not match the Relator's claims exactly or detail the legal consequences of their actions, they are substantially similar and provide material elements of the Relator's claims.  "An irreducible minimum is that the disclosures furnish evidence of the fraudulent scheme alleged."  *Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 293 (5th Cir. 2012).  The public disclosures produced by the defendants furnished evidence

of actions that the Relator alleges to be fraudulent.  They not only state the lost revenue as a result of the different chargeback payments, but they also reference the exact data set used to determine such loss.  The manufactures were aware of the issues that plagued their industry; however, they just did not possess the technology to solve the issue.  (Dkt. No. 46-5, Tab 60 at 47).  Thus, the Court is of the opinion that the Relator has not met his burden of showing a genuine issue of material fact as to whether his action was based on the defendants' public disclosures.

### 1. Original Source

Since the Relator's complaint is based on public disclosures, it is barred unless he is an original source.  *See* 31 U.S.C. § 3730(e)(4)(A).  To be an original source, the Relator must have "direct and independent knowledge of the information on which the allegations are based," and must have "voluntarily provided the information to the Government before filing the qui tam action."  *Reagan*, 384 F.3d at 177.  The Relator alleges he provided the Attorney General of the United States and the United States Attorney for the Southern District of Texas, the information on which he bases the allegations prior to the filing of this suit.  Thus, the issue is whether the Relator had direct or independent knowledge of the information.

The Relator does not have to "be an original source of every detail, [but] must have direct and independent knowledge of the core information underlying [the] allegations." *U.S. ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 782 F.Supp.2d 248, 277 (E.D.La. 2011).  A relator's knowledge is "direct" if it is "derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others."  *Laird*, 336 F.3d at 355.  "In order to be 'direct,' the information must be firsthand knowledge."  *See also U.S. ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008).  The Fifth

Circuit "requires independent knowledge of 'information on which the publicly disclosed allegations are based . . . ' " *Reagan*, 384 F.3d at 178.

In this case, the Court finds that the Relator does not have direct and independent knowledge of the information on which the publicly disclosed allegations are based. By the Relator's own admission, he only learned of the defendants' activities through his years of experience in the pharmaceutical industry and the review of audits prepared by his company. (Dkt. No. 19 at 7). As held by the court in *Reagan*, the Fifth Circuit does not impute "direct and independent knowledge" to relators for simply contributing their own exploratory efforts and experience to develop allegations of fraud. *Reagan*, 384 F.3d at 179. Relator never claimed that he personally prepared the audits, but instead mistakenly claims that he qualifies as an original source because he "viewed source documents." (Dkt. No. 52 at 29). "[D]irect knowledge is obtained first hand, by the relator's own efforts rather than by the labor of others, and not derivative of the information of others." *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 287 F. App'x 396, 400 (5th Cir. 2008) (internal quotations omitted). The fact that the Relator viewed the audits in "closing meetings" after they were completed, rather than compiling the information himself, would preclude him from securing "direct and independent knowledge" of the alleged fraud, as required by the Fifth Circuit.

In conclusion, the Court finds that there has been a public disclosure of allegations and transactions on which the complaint is based and that Relator is not an original source. Thus, the public disclosure bar applies and this Court lacks jurisdiction over Relator's claims based on the defendants' conduct from 2004 through July 22, 2010. Accordingly, the defendants' motion to dismiss is **GRANTED**, which grant deems the defendants' remaining claims for dismissal moot.

C.        Post-PPACA Amendment

The Court now addresses Relator's claims based on the defendants' conduct after July 22, 2010, under the PPACA-amended statute.  Under the new statute, the Court finds that: 1) there has been a public disclosure of allegations or transactions; and 2) the Relator is not an original source.   The 2010 amendment to the FCA amended the language "[n]o court shall have jurisdiction" to read "[t]he court shall dismiss an action or claim under this section, unless opposed by the Government." *Compare* 31 U.S.C. § 3730(e)(4)(A) (2006) with 31 U.S.C. § 3730(e)(4)(A) (Supp.2011).  Thus, the Fifth Circuit no longer treats the public disclosure bar as a jurisdictional threshold, instead agreeing with other circuits.  *See Abbott v. BP Expl. & Prod., Inc.*, No. 16-20028, 2017 WL 992506, at *2 (5th Cir. Mar. 14, 2017).  Under the amended FCA statute, the first step remains the same, but the second step requires analysis of whether the publicly disclosed allegations or transactions are "substantially the same allegations or transactions as alleged in the action." *See* 31 U.S.C. § 3730(e)(4)(A) (Supp.2011).  Accordingly, the Court combines these two steps in its analysis.

By combining the first two steps of the analysis, the issue fundamentally remains the same: whether the scope of Relator's action is similar to the allegations or transactions that are publicly disclosed.  The only difference then involves the type of documents the Court may consider in determining whether allegations or transactions were publicly disclosed.  *See* 31 U.S.C. § 3730(e)(4)(A) (Supp.2011) (mainly limiting available disclosures to news media and Federal sources).  Even with this amended language, the Court finds that there has been a public disclosure in the sources that remain viable under the amended statute.  For example, both the 2010 magazine article and the online blogs that discussed chargeback payments, 867 Data Sets, and lost revenue by the manufacturers, qualify as sufficient public disclosures under the amended

statute.  As previously discussed, these sources contain "allegations or transactions" that are related in scope to the Relator's claims.  Therefore, the Court finds that there has been a public disclosure and this action must be dismissed, unless the evidence shows that Relator is an original source of the public disclosures.

### 1. Original Source

As previously stated, the Relator alleges to have properly notified the Government before filing his Compliant, which would constitute voluntary disclosure under the Act and thus satisfy the first prong of the "original source" provision: "(i) prior to a public disclosure under subsection (e)(4)(A), [an individual] has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based." 31 U.S.C. § 3730(e)(4)(A) (Supp.2011).  As discussed above, there were other sources disclosed prior to the Relator's disclosure to the Government that constitute a public disclosure under subsection (e) (4)(A).  For this and the reasons outlined above, the Court finds that this disclosure is not sufficient under the FCA's voluntary disclosure prong.

The Court previously found that the Relator's knowledge was not independent of the publicly disclosed transactions.  This finding is the same for conduct occurring after the amendment to the statute even considering that the amended statute limits the sources that may constitute publicly disclosed allegations or transactions.  *See* 31 U.S.C. § 3730(e)(4)(A) (Supp.2011).  Accordingly, the Relator is not an original source under the knowledge prong.  In the alternative, the Court finds that the Relator failed to "have knowledge that . . . materially adds to the publicly disclosed transactions" and thus, the Relator is not an original source.

The Relator alleges that through his work at Syntegra he was able to uncover information that materially adds to the public disclosures.  More specifically, the Relator claims that his

Complaint identified the allegations of the Medicaid rebate fraud on a national scale.  (Dkt. No. 52 at 26).  The defendants counter that "Relator's non-conclusory allegations do not "materially add" to these public disclosures as required by the statute, but merely provide additional background and illustrative examples of what had already been disclosed."  (Dkt. No. 55 at 16).

"[The Court's] task is to ascertain whether the [relator's] allegedly new information is sufficiently significant or essential so as to fall into the narrow category of information that materially adds to what has already been revealed through public disclosures."  *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211 (1st Cir. 2016).  It is not a requirement that the defendants' public disclosures explain every detail of the fraudulent activities so long as the disclosures reveal "essential elements" of the fraud.  *See United States ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1079 (8th Cir.2014) (holding that a plaintiff's information did not materially add to the public disclosures because the disclosures already revealed " 'the essential elements comprising that fraudulent transaction . . . so as to raise a reasonable inference of fraud.' ").

Although the defendants' public disclosures do not specifically allege Medicaid fraud, the end result of these disclosures is one that naturally lead to the Relator's allegations.  Moreover, knowledge of the alleged Medicaid fraud does not materially add to the allegations already publicly disclosed, but merely details a consequence of the disclosed actions.  Accordingly, the Relator's knowledge does not "materially add" to the already disclosed allegations and, therefore, the Relator does not qualify as an "original source."

## VI.    Conclusion

In conclusion, the Court finds that Realtor does not qualify as an original source under either the voluntary disclosure prong or the knowledge prong of the statute.  Thus, 31 U.S.C. §

3730(e)(4) (Supp.2011) requires Relator's claims, based on the defendants' conduct after July 22, 2010, to be dismissed. Accordingly, the defendants' joint motion to dismiss is GRANTED; the defendants' remaining claims are DENIED as moot. Based on the foregoing discussion, the Court **GRANTS** the defendants' motion to dismiss.

It is so **ORDERED**.

SIGNED on this 31st day of March, 2017.

Kenneth M. Hoyt
United States District Judge